## JOSEPH G. STAYTON v. W. A. HASTAIN, Appellant.

### Division One, July 1, 1909.

1. **MORGAGE: Note: Parting With Ownership.** Where defendant is the owner and has possession of a live note and a duly recorded deed of trust securing the same, it must be shown by positive and convincing evidence that he has parted with his ownership of the same prior to the institution of the suit to set the deed of trust aside, or else the suit cannot prevail.

2. ———: ———: ———: **Sale by Payee's Consent: Sufficient Evidence.** Gosman executed a note for $1,000 to Avery and secured it by a duly recorded deed of trust on land, naming Hastain as trustee, and Avery for value indorsed the note to Hastain. Afterwards Gosman in payment of the note conveyed the land to Avery by quitclaim deed in which payment was recited. Thereafter Avery conveyed the land to plaintiff, who brings suit against Hastain to set the deed of trust aside. *Held*, that the evidence does not show that Hastain authorized Avery to sell the land to plaintiff, or that it was sold to plaintiff by his knowledge or consent.

3. ———: ———: ———: **Estoppel: Improvements.** Since Hastain did not know that Avery had sold the land to plaintiff until long after plaintiff had made the improvements on the land, he is not estopped to dispute plaintiff's right to have the deed of trust set aside because of the improvements made by the plaintiff thereon.

4. ———: **Limitations As Against Mortgagee.** Continuous, open and actual possession by the purchaser from the named mortgagee for ten years or longer is not such sufficient adverse possession against the actual *cestui que trust* as to bar the latter's rights under the deed of trust. Relations existing between the mortgagor and mortgagee are presumed to be friendly and to continue friendly until shown to be hostile; and the purchaser from the named mortgagor, with actual or constructive notice of the existence of the mortgage, stands in the same relation to the actual *cestui que trust* as did the original mortgagor to the named mortgagee.

Transferred from Kansas City Court of Appeals.

REVERSED.

*Francisco & Clark* and *Bruce Barnett* for appellant.

(1) Although defendant in his individual capacity acquired the note in question after its maturity, yet he stands in the shoes of and has all the rights and benefits of a purchaser before maturity, because he is the transferee of a purchaser before maturity. Langsford v. Varner, 65 Mo. App. 370; Bank v. Stanley, 46 Mo. App. 440; Griswold v. Buechle, 72 Mo. App. 53. (2) It is a general principle that a man cannot be divested or deprived of his property without his own consent or voluntary act and to divest him of his property by the act of an agent, two things must appear: first, the agency must be shown; second, authority of the agent to dispose of the property must be shown. Mechem on Agency, sec. 785. (3) The deed of trust in question having been properly acknowledged and recorded prior to the purchase of the land by plaintiff, the same imparted notice to him of the contents thereof and he is "deemed, in law and equity," to have purchased with such notice. R. S. 1899, sec. 924. (4) Defendant's right under his deed of trust was an interest in real estate and Avery had no authority to dispose of or relinquish the same or contract therefor as agent, because not authorized in writing. R. S. 1899, sec. 3418; Greening v. Steele, 122 Mo. 287; Hawkins v. McGroarty, 110 Mo. 546; Roth v. Georger, 118 Mo. 556. An oral agreement to cancel a mortgage note in consideration of the surrender of the premises is within the Statute of Frauds. Wendover v. Baker, 121 Mo. 273. (5) An agent authorized only to sell land has therefrom no implied power to release or discharge a mortgage belonging to his principal. Mechem on Agency, sec. 333. (6 ) The evidence wholly fails to show any agency or authority whatever upon Avery's part to dispose of or relinquish defendant's interest in the land under the deed

of trust. Mechem on Agency, sec. 100. Authority of an agent to sell or relinquish an interest in real estate must be established by clear, distinct and positive evidence. Billings v. Morrow, 7 Cal. 171, 68 Am. Dec. 235; Hunter v. Sacremento Valley Beet Sugar Co., 11 Fed. 15; Lord v. Sherman, 2 Cal. 498; Hurley v. Watson, 68 Mich. 531; Aldrich v. Londonderry, 5 Vt. 441. (7) Defendant's rights under his deed of trust have not been defeated by adverse possession because the evidence wholly fails to show any act of adverse possession as against defendant as mortgagee. The friendly relation between the mortgagor and mortgagee will be regarded as continuing until disclaimed by declarations or acts unmistakably hostile, and the purchaser from the mortgagor with constructive notice of the mortgage stands in the shoes of the mortgagor. Chouteau v. Riddle, 110 Mo. 366; Lewis v. Schwenn, 93 Mo. 29; Combs v. Goldsworthy, 109 Mo. 160; Benton Co. v. Czarlinsky, 101 Mo. 275; Comstock v. Eastwood, 108 Mo. 41; Hamilton v. Boggess, 63 Mo. 234. (8) The record of a deed given by a mortgagor after the execution of a mortgage does not constitute notice to the mortgagee, and is not an act of adverse possession. Meier v. Meier, 105 Mo. 433; 2 Jones on Mortgages, sec. 1624.

*T. W. Silvers* for respondent.

Stayton held adverse possession of the land for over ten years, namely, from November, 1891, till April, 1902, without any knowledge or information of Hastain's claim. Therefore, Hastain's claim is barred by the Statute of Limitations. The intention with which a party takes possession and holds it is a controlling factor in determining whether his possession is adverse or not. As was said in the case of Ewing v. Burnet, 11 Pet. (U. S.) 41, "The intention guides the entry and fixes its character." 1 Am. and Eng.

Ency. Law (2 Ed.), 789; Music v. Barney, 49 Mo. 458; Betts v. Brown, 3 Mo. App. 20; Knowlton v. Smith, 36 Mo. 507; Brown v. Cockrell, 33 Ala. 45; Alexander v. Wheeler, 69 Ala. 332; McMamares v. Seeton, 82 Ill. 498; Skinner v. Crawford, 54 Ia. 119; Winn v. Abeles, 35 Kan. 85; Colvin v. Land Ass'n, 23 Neb. 75. It is admitted that plaintiff's possession was actual, open and notorious, exclusive, and continuous, the only contention of appellant being that, in its incipiency, plaintiff's possession was friendly and not hostile to defendant's claim. Stayton is not in the position of one claiming under a mortgagor only. He holds title from the mortgagor and the mortgagee both. The mortgagor, Gosman, repudiated any further claim against him on the mortgage when he settled with Avery and re-conveyed to Avery in full payment of his indebtedness. There could not have been any plainer act on the part of the mortgagor to show his intention to end all claims against him on the mortgage. So far as he was concerned, he paid it off, as he thought. The mortgagee, Avery, took his conveyance in full settlement of the mortgage indebtedness. He then sells to Stayton and Eads, without disclosing to them that there was any mortgage on the land, or that there was any outstanding claim whatever. When they went into possession under a warranty deed from one who appeared of record to hold the entire title, they could not be held to act in recognition of any outstanding claim; and in fact they could not have acted in recognition of such claim, not having any actual or constructive notice thereof. Of record they appeared to hold both the title of the mortgagor and of the mortgagee, and their holding could not be held friendly to one claiming the interest of the mortgagee, when they had no actual knowledge of such claim, and of record are claiming to hold such title themselves. Stayton's possession was so open and notorious and his acts of ownership were so obvious that all persons

must have known that he claimed the land as his own, absolutely. And, having so claimed it for more than ten years before Hastain demanded any money on his deed of trust, he can still hold it as against Hastain. Daper v. Shoot, 25 Mo. 197; Fugate v. Pierce, 49 Mo. 441; Music v. Barney, 49 Mo. 458; Key v. Jennings, 66 Mo. 367; Bush v. White, 85 Mo. 360; Miller v. Bledsoe, 61 Mo. 96.

WOODSON, J.—The plaintiff brought this suit in the circuit court of Bates county for the purpose of setting aside a deed of trust upon eighty acres of land, situate in said county, and to remove from his title thereto the cloud cast upon it by said deed.

The land formerly belonged to one Herbert D. Gosman, who, on February 12, 1888, executed the deed of trust in question to W. A. Hastain, trustee, to secure his promissory note for the sum of $1,000, of even date, payable to A. C. Avery, due three years after date, and bearing interest at eight per cent, which deed of trust was properly recorded on April 27, 1888.

On January 23, 1891, Gosman conveyed the land to Avery in full payment of the note, secured by said deed of trust, but neither the note nor deed of trust was present when said transaction took place. Avery, in writing, acknowledged receipt of the payment of said note and recited therein the manner of its payment. At that time Avery was neither owner nor the holder of the note and deed of trust, and therefore omitted to deliver them to Gosman or to release the deed of trust of record. After Gosman had deeded the land to Avery, the latter for a valuable consideration endorsed the note to the defendant, and subsequently thereto, on November 25, 1891, while Avery owned the land, he conveyed by warranty deeds sixty acres of same to the plaintiff, for which he agreed to pay $700, and the remaining twenty acres to one Eads,

for which he agreed to pay $300. This latter twenty acres was later conveyed to plaintiff also. On January 16, 1893, Avery, after transferring the note to defendant, executed a quitclaim deed without request from plaintiff, whereby he attempted to release said deed of trust, but by error described the land as being in range thirty-nine, when, in fact, it was located in range twenty-nine.

Avery testified that it was his *impression* that at the time he took the deed from and executed the above receipt to Gosman, he (Avery) still held the note as owner thereof, and that his impression was that a short time thereafter, and according to his impression, after the maturity of the note, he transferred, indorsed and delivered the note to W. A. Hastain, the defendant, upon an indebtedness of his to the estate of P. and G. W. Walker, of which the defendant was administrator. Avery admitted that he was not at all positive as to the correctness of these impressions.

The defendant testified that he acquired the note prior to July 5, 1888, and shortly after the date of its execution; that he was at that time administrator of the estate of P. and G. W. Walker, to which estate Avery was indebted in a large sum; that as payment upon this indebtedness he turned over this and other notes to the defendant, as such administrator; that under an order of distribution of the assets of said estate, this note fell to the two Middaugh heirs, who, as grandchildren of one of the Walkers, had an interest in the estate. The defendant was guardian and curator of these Middaugh heirs, as well as administrator of the Walker estate; that in his next annual settlement as such administrator, made July 5, 1888, he accounted for a lump sum, which included the amount of this note collected from Avery upon his indebtedness to the estate, and in his annual settlement as guardian and curator of Pleasant W. Middaugh, a minor, made in the probate court of Henry

county, on July 5, 1888, he charged himself with this note secured by the deed of trust in question.

The annual settlement of W. A. Hastain (the defendant) as guardian and curator of Pleasant W. Middaugh, a record and court paper of the probate court of Henry county, filed and approved July 5, 1888, was introduced in evidence and shows among the assets of the ward in the hands of the guardian and curator the following:

"To ½ amt. received from P. &. G. Walker estate, and on Feb'y. 12, 1888, loaned to Herbert D. Gosman, at 8 per cent. secured by a deed of trust on Bates Co. real estate, being 80 acres in twp. 42, R. 29, $500."

Hon. R. E. Lewis, district judge in the State of Colorado, and for eighteen years prior to 1898 a member of the Clinton, Missouri, bar, testified by deposition that he was attorney for the defendant in connection with his settlements as administrator of the Walker estate, and as guardian and curator of the Middaugh heirs; that Avery turned over the note and deed of trust in question to the defendant as such administrator "very soon after the same were executed," as payment upon the indebtedness of from ten to twelve thousand dollars due from Avery to the Walker estate, and said note and deed of trust "were continuously thereafter carried by Hastain, as guardian and curator of said Middaugh heirs, as a part of the assets of their estate."

Upon final settlement with the Middaugh heirs, after they became of age, this note fell to the defendant in his individual capacity, by agreement, he paying them the amount thereof in cash.

Avery testified that prior to this sale to the plaintiff, he (Avery) tried to induce the defendant to take the land in payment of the note secured by the deed of trust upon it, but defendant, after making a trip to the land and looking it over, said that he would rather have one thousand dollars than the land, and

that he would not take the land for the note; that he (Avery) then had some negotiations with Stayton, the plaintiff, and reported back to the defendant that he could sell the land for $1,000 on time, and the defendant told him to do so; that the plaintiff then purchased the land from him (Avery), and in time paid the full amount of the purchase price in installments. The plaintiff testified that he never knew anything about there being a deed of trust upon the land until about two years before the institution of this suit; that he never at any time made any examination of the records, nor caused any to be made, to ascertain whether or not there were any liens or encumbrances upon the land. He testified that about one week before the date of his purchase of the land, and while negotiations were pending therefor, he went to Avery's office in Clinton, and there met two old men, to one of whom Avery said: "This [referring to plaintiff] is the old man who is going to buy our Bates county land;" that one of these old men looked like the defendant, but referring to a blemish which was on the defendant's nose at the time of the trial he said: "That place on his nose don't look just right, don't think it was there." It is most likely that plaintiff was mistaken as to one of these old men being the defendant, because the blemish referred to had been upon defendant's nose for about twenty years, and is very noticeable, as defendant testified, and was there in 1891, when this occurrence is claimed to have taken place; the defendant denied that such a remark was ever made in his presence; and Avery testified as follows: "It is my impression that it was right there in the office, and I made this remark to him [Hastain], in the presence of Stayton at the time, 'Here is these men come down to buy our land,' and I told him then, or that afternoon, they had taken it on time."

The defendant, in his testimony, denied that he ever told Avery to sell the land for $1,000, or for any

other sum, and testified that he never knew the land
had been sold at all until about two years before the
trial of this cause, at which time Avery so informed
him; that he thereupon asked Avery how it was that
he could sell the land, when he (the defendant) held
a deed of trust upon it, to which Avery replied: ''Well,
I sold it for what you said it was worth.''

The defendant further testified that he at no time
gave Avery or any other person to understand that
he would relinquish his rights under his deed of trust,
but at all times looked to his lien upon the land there-
under. The defendant testified, Avery admitted, and
it was undisputed, that defendant had the note and
deed of trust continuously in his possession ever since
it was first turned over to him, and that never until
two years before the institution of this suit was any
demand made upon him to release the deed of trust,
or surrender the note. And it is also undisputed that
neither Gosman, nor the plaintiff, ever made any de-
mand or request of either the defendant or Avery
that the deed of trust be released.

The note has been kept in force by the payments
made upon it from time to time by Avery, who was
liable upon it, both as indorser and by virtue of his
obligation to plaintiff under the covenants of his war-
ranty deed.

The evidence shows that the plaintiff has put some
valuable improvements upon the land since he pur-
chased it, but there is no evidence that the defendant
had any knowledge whatever that same was being
done.

There was some testimony introduced by plain-
tiff bearing upon the question of adverse possession,
and showing that he had made valuable improvements
upon the land since he had purchased it from Avery,
but that evidence will be further considered later on.

The trial court found the issues for plaintiff and
entered a decree setting aside the deed of trust and

clearing plaintiff's title from the cloud thereof and divesting the defendant from all right, title and interest in and to said land under and by virtue of said deed of trust.

In due time and in proper form defendant appealed said cause to the Kansas City Court of Appeals, which 'was by that court transferred to this court, because title to real estate is involved in the cause.

I.  This record conclusively shows that Hastain, the appellant, as administrator of the estate of P. & G. W. Walker, sometime prior to July 5th, 1888, in good faith and for a valuable consideration, acquired both the legal and equitable title and possession of the note and deed of trust described in the pleadings and evidence in this case, and that subsequently he individually acquired title to both, and before he can be deprived of his legal rights thereto it must be shown by clear, positive and convincing evidence that he had parted with his ownership prior to the institution of this proceeding.  Now, in what way and in what manner has the respondent attempted to show plaintiff's disposition of the note and deed of trust?

If I correctly understand counsel for respondent, his contentions are that appellant parted with his interest in and to said note and deed of trust in one or all of the following modes:

First:  By authorizing Avery to sell the land to respondent, or that Avery sold the land to respondent with appellant's knowledge and consent.

Second:  That appellant is estopped from asserting his interest in said note and deed of trust, for the reason that he stood by, without objection, and permitted respondent to make valuable and lasting improvements upon the land, at great cost, and that it would be unjust and inequitable to now permit ap-

221 Sup—46

pellant 'to enforce his legal rights under the note and deed of trust, and;

Third. That appellant's rights and interests in and to the note and deed of trust are barred by the Statute of Limitations, or rather that respondent has acquired title to the land described in the deed of trust by adverse possession.

We will discuss and dispose of those contentions in the order stated.

As to the first, it is sufficient to state that this record is barren of all evidence worthy of credence which even tends to show appellant authorized Avery to sell and convey the land to respondent. While Avery, by insinuation more than by direct testimony, tried to convey the idea to the court that he had authority from respondent to sell the land, yet that testimony of Avery is flatly and unconditionally denied by appellant. And from the disclosures made by this record, we have no hesitancy whatever in saying that the dishonest conduct of Avery all through this transaction shows his testimony to be entirely unworthy of belief.

And the contention that Avery sold the land to respondent with the knowledge and consent of appellant is equally unfounded and unsupported by the evidence. The greater weight of the evidence not only disproves that contention but it is conclusive that appellant did not know the land had been sold at all until about two years before this suit was instituted.

As to the second contention made by counsel for respondent, which regards the estoppel set up against appellant's right to assert his title and interests in and to the note and deed of trust, it may also be said that there is no substantial evidence to be found in this record which gives support to that contention. The evidence shows that appellant not only did not stand by and see respondent make the improvements upon the land, without objection, but it also shows that

he did not know that the land had been sold to him until some two years before this suit was brought, and could not, therefore, have acquiesced in the making of the improvements by respondent.

The third and last contention presented by respondents is, that he has been in the actual, open, exclusive and adverse possession of this land for a period of more than ten years, next before the institution of this suit, claiming title thereto against the world, and especially against the appellant. The record shows, and it is undisputed, that on November 25, 1891, Avery, by warranty deeds, conveyed sixty of this eighty acres of land to respondent for the sum of $700, and the remaining twenty acres to Eads for the sum of $300, which latter tract respondent subsequently acquired from Eads. They immediately took possession of the land under those deeds and have been in the unbroken possession ever since, and claiming title thereto and thereunder. But that alone is not sufficient to bar appellant's rights under the deed of trust, because the evidence wholly fails to show any act of adverse possession as against appellant as mortgagee.

All of the authorities sustain the proposition that the relations existing between the mortgagor and mortgagee are presumed to be friendly and not hostile until the contrary is shown, and that friendly relation must be presumed to continue until disclaimed by declarations or acts of unmistakable hostility, and the purchaser from the mortgagor with actual or constructive notice of the existence of the mortgage stands in the same relations to the mortgagee as did the original mortgagor. [Chouteau v. Riddle, 110 Mo. 366, and cases cited; Lewis v. Schwenn, 93 Mo. 26; Combs v. Goldsworthy, 109 Mo. l. c. 160; Benton County v. Czarlinsky, 101 Mo. 275.]

We are, therefore, of the opinion that none of the three contentions of respondent are tenable.

II. Counsel for both appellant and respondent discuss many secondary or minor questions to those before determined, which only amplify or throw light upon those questions but do not control them, which makes it unnecessary to consider them in this opinion.

We are, therefore, of the opinion that the judgment should be reversed and the bill be dismissed. It is so ordered.

All concur, except *Graves, J.*, not sitting.